UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JERRY D. HUTCHINS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:09-0026 |
| ) | Judge Echols |
| ) | |
| TAFT HENDRIXSON, individually and ) | |
| THE MUNICIPAL GOVERNMENT OF ) | |
| THE CITY OF SMITHVILLE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Defendants Taft Hendrixson and The Municipal Government of the City of Smithville filed a Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 56 (Docket Entry No. 9), to which Plaintiff Jerry D. Hutchins, Jr., filed a late response (Docket Entry No. 13), and Defendants filed a reply (Docket Entry No. 19). As set forth below, Defendants are entitled to summary judgment on the undisputed facts of the case.

## I. FACTS

Plaintiff did not provide any affidavits, deposition transcripts or other documentary evidence in support of his opposition to the motion for summary judgment. According to the unverified Complaint, Plaintiff was employed as a deputy in the Wilson County Sheriff's Department. Plaintiff is the son of City of Smithville Alderman Jerry Hutchins, Sr. and Plaintiff had four years of law enforcement experience.

On December 12, 2007, the City of Smithville advertised the position of police investigator. No salary for the position was set in the published job posting. Plaintiff alleged in his Complaint, however, that the job was advertised to fill the position vacated by Officer Deffendoll, who was paid at the rate of $17.19 per hour. Plaintiff alleged that he applied for the position and Defendants represented to him that he would be hired for the job and compensated at the same rate of pay as

1

Officer Deffendoll. Plaintiff then resigned from his position with the Wilson County Sheriff's Department.

On January 29, 2008, the Board of Mayor and Aldermen voted 3-1 to hire Plaintiff as police investigator, but no hourly wage or salary for Plaintiff was set at that time. (Docket Entry No. 9-6, Hunter Hendrixson Aff.; Docket Entry No. 9-2, Board Meeting Minutes.) Plaintiff's father, Alderman Jerry Hutchins, Sr., voted in favor of his son's employment after consulting with the University of Tennessee Municipal Technical Advisory Service and determining that he could properly cast a vote after disclosing his personal interest in the matter to the Board of Mayor and Aldermen. (Id.)

On February 18, 2008, the Board of Mayor and Aldermen addressed the issue of how much Plaintiff should be paid for his work in the police investigator position. (Docket Entry No. 9-3, Board Meeting Minutes at 2.) The minutes of the meeting reflect that, "[a]fter much debate by the Mayor and the Board," a motion was made and seconded to start the police investigator's pay at $15.95 per hour and increase it to $17.19 per hour after sixty (60) days. Three aldermen, Thomas, Sullivan, and Plaintiff's father, voted in favor of the motion. Two aldermen, Burger and White, voted against the motion. Thus, the motion passed on a 3-2 vote. Immediately thereafter, Mayor Hendrixson passed out copies of a letter he had signed vetoing the action of the Aldermen. (Id..at 3.) In the letter, Mayor Hendrixson stated he made inquiries to nearby police departments and learned they pay their police investigators comparable to a police sergeant. He explained his belief that police investigator pay should not exceed that of a sergeant, and sergeant pay started at $11.89 per hour and increased to $13.13 per hour after 60 days. He noted that the investigator would top out at $15.95 after four years of service, as stated in the 2007 Smithville Wage Chart for the fiscal year budget. (Id.)

A roll call vote was taken to override the veto, but the vote failed. After further discussion, Alderman White made a motion to start the police investigator's pay at $11.89 per hour with an

2

increase to $13.13 after 60 days. Although the motion received a second, it failed to pass on a 3-2 vote. (Docket Entry No. 9-3 at 2.)

The Board of Mayor and Aldermen continued discussing the subject and asked for input from the City Attorney and the Chief of Police. Alderman Sullivan then made a motion to pay Plaintiff at the Mayor's proposed $11.89 per hour start pay, increase it to $13.13 per hour, and at the next meeting have a police investigator pay scale set in place adjusting the current pay for Plaintiff if necessary. The motion was seconded and all members voted in favor, 5-0. Alderman Hutchins stated that he was "voting his conscience before casting his vote." (Id.)

Plaintiff started work in the police investigator position the next day, February 19, 2008, earning $11.89 per hour, to be increased to $13.13 after 60 days. He has remained employed in the position.

The budget ordinance for 2007-2008 did not include a slot for Plaintiff's position. On June 16, 2008, the Board of Mayor and Aldermen passed the budget ordinance for 2008-2009. In that budget ordinance, Plaintiff's wage was set at $13.70 per hour. The Board of Mayor and Aldermen voted unanimously to adopt the budget ordinance, which set Plaintiff's hourly wage.

Defendant Hendrixson attests that Plaintiff was not a city employee until he commenced work on February 19, 2008. (Docket Entry No. 9-7, Taft Hendrixson Aff.) He also avers that the Aldermen did not challenge his right to veto their action in setting Plaintiff's hourly wage at the time he issued the veto on February 18, 2008. (Id.) He also avers that he was acting in his legislative capacity as the Mayor of the City of Smithville when he registered the veto, and that he and the Aldermen acted within the Charter of the City of Smithville in hiring Plaintiff and setting his rate of pay. (Id.)

Plaintiff contends that the Aldermen approved a higher rate of pay for him, but Mayor Hendrixson vetoed that action without lawful authority. Plaintiff alleges in his supporting brief that, while Defendant Hendrixson and Plaintiff's father were once friends, "an intense rivalry and

3

acrimony" developed between them over the years, and this explained Defendant Hendrixson's motive in vetoing the action to pay Plaintiff more money.

Plaintiff asserts an equal protection claim against the Defendants, which actually appears to be a claim that Defendants retaliated against Plaintiff due to his association with Alderman Hutchins, Sr., in violation of the First Amendment. Plaintiff also asserted state-law claims for misrepresentation and detrimental reliance.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there is not a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. The nonmoving party must go beyond the pleadings. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

## III. ANALYSIS

The Defendants brought their motion under Rule 12(b)(6) and Rule 56. The Court construes the motion as one for summary judgment brought under Rule 56 because Defendants produced evidence outside the pleadings which the Court has considered in order to understand the facts of the case.

Defendants supported their summary judgment motion with evidence. Faced with the properly supported summary judgment motion, Plaintiff could not merely rely on the allegations and details of his Complaint; rather, he was required to provide affidavits or other admissible evidence to set out specific facts showing a genuine issue for trial, as required by Rule 56(e)(2).

The Court has no evidence before it from which it can take Plaintiff's asserted position as true and assess whether a reasonable jury could find that Defendant Hendrixson acted unlawfully or unconstitutionally when he vetoed the Aldermen's initial decision to pay Plaintiff over $17.00 per hour. Plaintiff has presented nothing but his own self-serving allegations, and this is not enough. Because Plaintiff provided no evidence, even his own affidavit, to support his position, summary judgment, if appropriate, must be entered in favor of the Defendants. Id.; Celotex, 477 U.S. at 325; Leary v. Livingston County, 528 F.3d 438, 444 (6th Cir. 2008).

The Court concludes that summary judgment in favor of the Defendants is appropriate. The elements of a claim of First Amendment retaliation are: (1) Plaintiff engaged in protected conduct; (2) an adverse action was taken against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the Plaintiff's protected conduct. Tucker v. City of Richmond, 388 F.3d 216, 220 (6th Cir. 2004). By failing to produce any evidence in opposition to the summary judgment motion, Plaintiff cannot show that there are any genuine issues of material fact for trial on these elements of his constitutional claim. Moreover, Plaintiff has not produced any evidence of an unconstitutional policy or custom in order to hold the City of Smithville liable under Monell v. New York City Dept. of Social Servs., 436 U.S.

658, 692-694 (1978). See Gregory v. City of Louisville, 444 F.3d 725, 752 (6th Cir. 2006) (observing a local government entity violates 42 U.S.C. § 1983 only where its official policy or custom actually serves to deprive an individual of his constitutional rights).

Finally, the Court believes there is some room for debate under the language of the Charter of the City of Smithville whether Defendant Hendrixson had authority to veto the Board's initial decision to pay Plaintiff over $17.00 per hour. The Charter gives the Mayor veto power as follows:

> He shall have veto power over any action of the Board, except as hereinafter provided, giving his reasons therefor in writing, with the exception of the hiring policy as set out in SECTION 5, Paragraph 2; but the Board may, by a two-thirds vote of the entire membership of said Board, pass the same over his veto; or if he fails to return the same on or before the next meeting of the Board, he shall be deemed to have approved the same and the same shall become a law without such approval; and each and every law, ordinance, resolution or vote, except on the question of adjournment, shall require the approval of the Mayor before it shall become effective, except as hereinbefore provided.

(Docket Entry No. 9-5, City Charter at 9.) In Section 5, paragraph 2, the Charter provides in pertinent part:

> All employees or appointed officials of the City . . . shall be employed by a majority vote of the Aldermen of said City, and in case of a tie vote of said Aldermen in this and any other question voted on by said Aldermen, the Mayor shall have the power and it is hereby declared to be his duty to cast the deciding vote in such election. It shall also become the duty of said Board to fix by ordinance the salaries of all employees and officials employed by the City.

(Id. at 8). The sentence granting the Mayor veto power "over any action of the Board . . . with the exception of the hiring policy as set out in SECTION 5, Paragraph 2" does not necessarily make clear whether the setting of salaries or wages by ordinance, including the annual budget ordinance, is part and parcel of the "hiring policy" set out in Section 5 of the Charter, or whether the decision to employ an individual is an issue over which the Mayor has no veto power, but the decision as to what to pay that individual is an issue over which the Mayor does have veto power.

The Court does not need to resolve these issues because there is no factual dispute that Defendant Hendrixson acted in his official capacity as Mayor when he registered his veto and when, as an executive official, he introduced an annual budget ordinance that set the wages and salaries of city employees, including Plaintiff. As such, he is entitled to legislative immunity. Bogan v.

6

Scott-Harris, 523 U.S. 44, 55 (1998). Even if Defendant Hendrixson's discretionary decisions originated from corrupt motives as Plaintiff alleges, "'he may be impeached or indicted, but the law will not tolerate an action to redress the individual wrong which may have been done.'" Id. at 50.

Defendant Hendrixson is also entitled to qualified immunity on the constitutional claim brought against him in his individual capacity. See Pearson v. Callahan, — U.S. —, 129 S.Ct. 808 (2009). Plaintiff did not produce any evidence showing that he was subjected to unlawful First Amendment retaliation. Plaintiff having failed to make out a violation of a constitutional right, qualified immunity protects Defendant Hendrixson from suit. See id.

Because Plaintiff did not make a proper evidentiary record in opposition to the summary judgment motion, he has not shown there are any genuine issues of material fact for trial on his state-law claims for misrepresentation and detrimental reliance.

## IV. CONCLUSION

For all of the reasons stated, the Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 56 (Docket Entry No. 9), filed by Defendants Taft Hendrixson and The Municipal Government of the City of Smithville, will be granted. This case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

7